# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-3705

_____

United States of America

*Plaintiff - Appellee*

v.

Meigel M. Craddock

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: September 22, 2016
Filed: November 8, 2016

_____

Before SMITH, MELLOY, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

After a jury trial, Meigel Craddock was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Craddock was sentenced to a mandatory minimum of fifteen years' imprisonment under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). Craddock makes two arguments on appeal: (1) the *Terry* frisk that led to his arrest exceeded its proper scope, and (2)

his prior conviction for Missouri burglary does not qualify as a predicate offense under the ACCA. For the reasons discussed below, we reverse as to the first issue and do not reach the second.

## I.

A few minutes before 11:00 a.m. on November 20, 2013, Officer Charles Prichard of the Kansas City Police Department was stopped at a stop sign when he observed a green Pontiac enter the intersection and slow down as if to turn in his direction. Instead, the Pontiac hesitated for a few moments before proceeding straight through the intersection. Finding this behavior suspicious, Officer Prichard called in the Pontiac's license plate number and discovered that the vehicle was stolen. He followed the vehicle but lost sight of it when it turned down a side street. Officer Prichard then proceeded to drive up and down nearby streets looking for the vehicle. At approximately 11:06 a.m., Officer Prichard noticed a man later identified as Craddock walking down the sidewalk of one of the side streets. Officer Prichard discovered the stolen Pontiac parked on the side of the street shortly after passing Craddock, at which point Prichard turned around in order to relocate Craddock. Driving back up the street, Officer Prichard saw Craddock standing in the front yard of a residence about fifty feet from the stolen Pontiac. Officer Prichard did not notice any other people in the area.

Officer Prichard parked his vehicle and approached Craddock. When Officer Prichard asked Craddock what he was doing, Craddock appeared nervous and said he was going home, but he could not provide Officer Prichard with an address. Believing that Craddock had just exited the stolen Pontiac, Officer Prichard handcuffed Craddock and frisked him for a weapon. The frisk did not reveal a weapon, but Officer Prichard did feel what he believed to be a vehicle key fob in Craddock's pants pocket. Officer Prichard removed the key fob from the pocket and, after noticing that it had a Pontiac emblem, used it to unlock the stolen Pontiac. After

-2-

opening the door of the vehicle, Officer Prichard saw a handgun on the floor next to the driver's seat. Upon learning that Craddock was a convicted felon, Officer Prichard arrested him for possessing a handgun. Craddock's DNA was later matched to DNA discovered on the vehicle steering wheel, but insufficient DNA was present on the handgun for it to be tested.

On December 11, 2013, Craddock was indicted on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Craddock moved to suppress the evidence resulting from the frisk of his person and the removal of the key fob from his pocket. The district court denied the motion, and a jury subsequently returned a guilty verdict. After determining that Craddock qualified as an armed career criminal, the court sentenced him to 250 months' imprisonment and five years of supervised release.

## II.

"When considering a suppression order, we review the district court's factual findings for clear error and review de novo its conclusion about whether the Fourth Amendment was violated during the search." *United States v. Janis*, 387 F.3d 682, 686 (8th Cir. 2004). As an initial matter, Craddock's proximity to the stolen vehicle and his demeanor when Officer Prichard approached him provided the officer with reasonable suspicion to frisk Craddock for weapons. *See Terry v. Ohio*, 392 U.S. 1, 30 (1968); *United States v. Hanlon*, 401 F.3d 926, 929 (8th Cir. 2005) ("[W]hen officers encounter suspected car thieves, they also may reasonably suspect that such individuals 'might possess weapons.'" (quoting *United States v. Rowland*, 341 F.3d 774, 784 (8th Cir. 2003))).

However, in order to seize items other than weapons, "the officer conducting a pat-down search [must] have probable cause to believe the item in plain touch is incriminating evidence." *United States v. Bustos-Torres*, 396 F.3d 935, 944-45 (8th

Cir. 2005) (citing *Minnesota v. Dickerson*, 508 U.S. 366, 376 (1993)). The item need not be contraband, but "[t]o give rise to probable cause, the incriminating character of the object must be immediately identifiable." *Bustos-Torres*, 396 F.3d at 945; *see also United States v. Cowan*, 674 F.3d 947, 953 (8th Cir. 2012) ("A police officer 'lawfully pat[ting] down a suspect's outer clothing' may seize any 'object whose contour or mass makes its identity immediately apparent' as incriminating evidence." (quoting *Dickerson*, 508 U.S. at 375) (alterations in original)). Ultimately, "an item's incriminatory nature is immediately apparent if the officer at that moment had 'probable cause to associate the property with criminal activity' . . . meaning 'the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of a crime.'" *Cowan*, 674 F.3d at 953 (quoting *Texas v. Brown*, 460 U.S. 730, 741-42 (1983) (plurality opinion)). Probable cause requires only "a 'practical, nontechnical' probability that incriminating evidence is involved," *id.* (quoting *Brown*, 460 U.S. at 742), but the officer may not manipulate the item in order to ascertain the incriminating character where it is not immediately apparent to him, *see Dickerson*, 508 U.S. at 379.

In this case, the key fob's incriminating character was not immediately apparent upon plain feel. Officer Prichard testified that he was not able to observe the person driving the car or even identify whether the individual was male or female. Officer Prichard did not observe Craddock exit the vehicle, and Officer Prichard had to turn his patrol car around several times in order to locate Craddock, who did not attempt to flee. While Craddock was relatively close to the stolen vehicle and behaving nervously, circumstances which make this question close, feeling an unidentified key fob in Craddock's pocket did not provide Officer Prichard with probable cause to conclude that the key fob belonged to the stolen Pontiac. Key fobs are extremely common items carried in the pockets of a large portion of the population on a daily basis. As a result, without more information, Officer Prichard could not have reasonably associated the key fob with the stolen Pontiac at that point.

-4-

*See United States v. Bailey*, 417 F.3d 873, 877 (8th Cir. 2005) (explaining that a hunch is insufficient to provide reasonable suspicion, much less probable cause). It was not until Officer Prichard removed the key fob from Craddock's pocket and observed the Pontiac emblem that he had reason to associate the key fob with the stolen vehicle. Thus, as in *Minnesota v. Dickerson*, the officer required "a further search, one not authorized by *Terry* or by any other exception to the warrant requirement" to determine the item's incriminating character. 508 U.S. at 379. Accordingly, the key fob's seizure violated the Fourth Amendment.

The Government raises several counterarguments to suppression. First, it argues that Craddock had no reasonable expectation of privacy in the stolen key fob, the stolen car, or the handgun. While Craddock had no reasonable expectation of privacy in the stolen vehicle or contraband, *see United States v. Long*, 797 F.3d 558, 568 (8th Cir. 2015), he did have a reasonable expectation of privacy in the contents of his pants pockets. *See United States v. $53,082 in U.S. Currency*, 985 F.2d 245, 249 (6th Cir. 1993) (finding an expectation of privacy "in items carried on one's person"). Second, the Government contends that the evidence is admissible under the inevitable discovery doctrine. The inevitable discovery doctrine provides an exception to the exclusionary rule where "the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." *Nix v. Williams*, 467 U.S. 43, 444 (1984). Although the Government argues that the police would have inevitably discovered the contents of the stolen vehicle, the Government does not contend that the police would have inevitably discovered the key fob in Craddock's pocket. Accordingly, inevitable discovery has no bearing on whether the key fob should have been suppressed. To the extent the inevitable discovery doctrine applies to evidence other than the key fob, the district court did not address the question, and we decline to decide it in the first instance.

Accordingly, the officer's seizure of the key fob exceeded the appropriate scope of a *Terry* frisk, and it should have been suppressed. As a result, we do not reach Craddock's sentencing challenge.

## III.

For the foregoing reasons, we vacate Craddock's conviction and remand for proceedings not inconsistent with this opinion.

_____